UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-60057-CR-ALTONAGA

UNITED STATES OF AMERICA

vs.

MOHANNAD ILBIH ILBIH,

    **Defendant.**
    _____/

## NOTICE OF FILING FACTUAL PROFFER

The United States of America, through the undersigned Assistant United States Attorney, hereby proffers the following facts it intends to present at the Detention Hearing of Mohannad Ilbih Ilbih ("the Defendant"), currently set for March 7, 2019. This proffer does not specify every fact known to law enforcement relating to the investigation of the Defendant.

In or around February 2014, law enforcement received information about an anticipated illicit delivery of bulk cash in Connecticut. On or about February 10, 2014, law enforcement conducting surveillance observed SUBJECT 1 deliver something to an individual in a vehicle. Law enforcement conducted a knock and talk of SUBJECT 1's apartment, and SUBJECT 1 consented to a search of the apartment. In the apartment, law enforcement discovered approximately $120,000 in cash. SUBJECT 1 told law enforcement that the cash constituted proceeds of the sale of cocaine. SUBJECT 1 stated he began to receive, consolidate, and deliver bulk cash for an individual in Puerto Rico in July 2013, and that he would typically receive between $50,000 and $450,000.

On or about February 24, 2014, SUBJECT 1 informed law enforcement that he had agreed to deliver cash to an unknown individual at a rendezvous point in Connecticut. Law enforcement

established surveillance of the rendezvous point and observed SUBJECT 1 meet with SUBJECT 2. Law enforcement confronted SUBJECT 2, who later agreed to cooperate with law enforcement.

SUBJECT 2 stated he was instructed by the Defendant to retrieve the cash from SUBJECT 1 and distribute the cash, and that he had moved cash on behalf of the Defendant approximately 19 times, moving over $5,500,000, starting in or around February 2009. SUBJECT 2 stated he would fly from South Florida to a city designated by the Defendant, where he would receive instructions about how to retrieve the cash. SUBJECT 2 stated he would pick up the cash from different people, and that after receiving the cash, he would rent a car and drive the cash down to Broward County. SUBJECT 2 stated he would either deliver the cash to the Defendant in Broward County or deposit the cash into his own bank account and then transfer the funds to other accounts as specified by the Defendant. SUBJECT 2 stated he believed the cash was proceeds of narcotics transactions, and that the Defendant told him the cash belonged to gang members and sketchy people.

SUBJECT 2 provided law enforcement with email correspondences between he and the Defendant in which the Defendant detailed various cash pickups and cash disbursements. For example, in the emails, the Defendant provided SUBJECT 2 with information relating to banking transactions to be undertaken by SUBJECT 2, including deposit instructions, wire instructions, beneficiary information, and transaction confirmations. In the emails, the Defendant directed SUBJECT 2 to transfer funds to individuals and entities around the world, including Panama, Switzerland, Lebanon, Italy, Spain, England and Peru. The Defendant instructed SUBJECT 2 to conduct several wire transfers in foreign currencies, including Euros, Canadian currency, and Australian currency. The emails also specified SUBJECT 2's commission or fee. In the emails, the Defendant wrote in coded language, using nicknames to describe beneficiaries of wire transactions

and names of objects to describe currency. Law enforcement executed a warrant to search the Defendant's email account, and while the emails provided by the Defendant were not discovered, meaning that the emails were either deleted by the Defendant or stored on a foreign server, law enforcement found other emails showing that the Defendant in fact used that email account. Law enforcement obtained travel records, car rental records, bank records, and wire sheets, which corroborate some of the cash pickups described by SUBJECT 2.

On or about July 13, 2015, at the direction of law enforcement, SUBJECT 2 met with the Defendant. During the meeting, which was recorded and observed by law enforcement, the Defendant discussed moving cash for other people, as well as the failed cash pickup in Connecticut. The Defendant told SUBJECT 2 that the Defendant was forced to offer real estate and a vehicle to the owners of the cash as collateral for the lost cash. Neither the Defendant nor SUBJECT 2 has a license to operate a money transmitting business.

On February 21, 2019, the Defendant was charged by indictment with conspiracy to commit money laundering, attempt to commit money laundering, and unlicensed operation of a money transmission business. If convicted, the Defendant faces a statutory maximum term of imprisonment of 45 years and a guideline range of 188-235 months' imprisonment. If convicted, the Defendant's known real property will be subject to forfeiture.

        Respectfully submitted,

        ARIANA FAJARDO ORSHAN
        UNITED STATES ATTORNEY

By:   s/ Brian J. Shack
        Brian J. Shack
        Assistant United States Attorney
        Court ID No. A5502166
        99 N.E. 4th Street
        Miami, FL 33132-2111

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on February 28, 2019, I electronically filed the foregoing document with the Clerk of the Court, and served a copy upon all counsel of record, using CM/ECF.

                              By:   s/Brian J. Shack
                                      Brian J. Shack
                                      Assistant United States Attorney