UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-60057-CR-ALTONAGA

UNITED STATES OF AMERICA,

vs.

MOHANNAD ILBIH ILBIH,

    Defendant.
_____/

## DETENTION ORDER

Pursuant to 18 U.S.C. § 3142(f), on March 7, 2019, a hearing was held to determine whether Mohannad Ilbih Ilbih (hereinafter, "the defendant") should be detained prior to trial. Having considered the factors enumerated in 18 U.S.C. § 3142(g), this Court finds that no condition or combination of conditions of release will reasonably assure the appearance of this defendant as required. Therefore, it is hereby ORDERED that the defendant, Mohannad Ilbih Ilbih, be detained prior to trial and until the conclusion thereof.

In accordance with the provisions of 18 U.S.C. § 3142(i), the Court hereby makes the following findings of fact and statement of reasons for the detention:

1. Section 3142(g) directs the judicial officer to consider the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or a crime involving a minor victim, a controlled substance, a firearm, an explosive, or a destructive device. The defendant is not charged with an offense that comes within one of these categories. Rather, he is

charged with conspiracy to commit money laundering,[1] in violation of 18 U.S.C. §1956(h), attempt to commit money laundering, in violation of 18 U.S.C. §1956(a)(1)(B)(i), and unlicensed operation of a money transmitting business, in violation of 18 U.S.C. § 1960. 18 U.S.C. § 3142(g)(1).

2. The Court received credible evidence that the defendant committed the offenses with which he has been charged. More specifically, the Government adopted its Notice of Filing Factual Proffer ("Factual Proffer") [ECF No. 4] as its case agent's testimony on direct examination. The content of the Factual Proffer was not materially impeached, contradicted, or rebutted, and the undersigned accepts the facts set forth therein as true for purposes of this bond determination. In pertinent part, the Factual Proffer states:

> In or around February 2014, law enforcement received information about an anticipated illicit delivery of bulk cash in Connecticut. On or about February 10, 2014, law enforcement conducting surveillance observed SUBJECT 1 deliver something to an individual in a vehicle. Law enforcement conducted a knock and talk of SUBJECT 1's apartment, and SUBJECT 1 consented to a search of the apartment. In the apartment, law enforcement discovered approximately $120,000 in cash.[2] SUBJECT 1 told law enforcement that the cash constituted proceeds of the sale of cocaine. SUBJECT 1 stated he began to receive, consolidate, and deliver bulk cash for an individual in Puerto Rico in July 2013, and that he would typically receive between $50,000 and $450,000.
>
> On or about February 24, 2014, SUBJECT 1 informed law enforcement that he had agreed to deliver cash to an unknown individual at a rendezvous point in Connecticut. Law enforcement established surveillance of the

---

[1] Although the Indictment does not charge the defendant with a controlled substances offense, it does charge that the financial transactions at issue involved the proceeds of a specified unlawful activity, that is, the distribution and possession with intent to distribute a controlled substance.

[2] At the hearing, the Government proffered that a police K-9 alerted to the scent of narcotics on the cash. Additionally, Subject 1 has a prior narcotics trafficking conviction and admitted that he has been involved in narcotics trafficking for many years.

2

rendezvous point and observed SUBJECT 1 meet with SUBJECT 2. Law enforcement confronted SUBJECT 2, who later agreed to cooperate with law enforcement.

SUBJECT 2 stated he was instructed by the Defendant to retrieve the cash from SUBJECT 1 and distribute the cash, and that he had moved cash on behalf of the Defendant approximately 19 times, moving over $5,500,000, starting in or around February 2009. SUBJECT 2 stated he would fly from South Florida to a city designated by the Defendant, where he would receive instructions about how to retrieve the cash. SUBJECT 2 stated he would pick up the cash from different people, and that after receiving the cash, he would rent a car and drive the cash down to Broward County. SUBJECT 2 stated he would either deliver the cash to the Defendant in Broward County or deposit the cash into his own bank account and then transfer the funds to other accounts as specified by the Defendant. SUBJECT 2 stated he believed the cash was proceeds of narcotics transactions, and that the Defendant told him the cash belonged to gang members and sketchy people.

SUBJECT 2 provided law enforcement with email correspondences between he and the Defendant in which the Defendant detailed various cash pickups and cash disbursements. For example, in the emails, the Defendant provided SUBJECT 2 with information relating to banking transactions to be undertaken by SUBJECT 2, including deposit instructions, wire instructions, beneficiary information, and transaction confirmations. In the emails, the Defendant directed SUBJECT 2 to transfer funds to individuals and entities around the world, including Panama, Switzerland, Lebanon, Italy, Spain, England and Peru. The Defendant instructed SUBJECT 2 to conduct several wire transfers in foreign currencies, including Euros, Canadian currency, and Australian currency. The emails also specified SUBJECT 2's commission or fee. In the emails, the Defendant wrote in coded language, using nicknames to describe beneficiaries of wire transactions and names of objects to describe currency. Law enforcement executed a warrant to search the Defendant's email account, and while the emails provided by [SUBJECT 2] were not discovered, meaning that the emails were either deleted by the Defendant or stored on a foreign server, law enforcement found other emails showing that the Defendant in fact used that email account. Law enforcement obtained travel records, car rental records, bank records, and wire sheets, which corroborate some of the cash pickups described by SUBJECT 2.

On or about July 13, 2015, at the direction of law enforcement, SUBJECT 2 met with the Defendant. During the meeting, which was recorded and observed by law enforcement, the Defendant discussed moving cash for other people, as well as the failed cash pickup in Connecticut. The Defendant told SUBJECT 2 that the Defendant was forced to offer real

3

estate and a vehicle to the owners of the cash as collateral for the lost cash.[3] Neither the Defendant nor SUBJECT 2 has a license to operate a money transmitting business.

Factual Proffer at 1-3 [ECF No. 4].

According to the Government, if convicted of the charged offenses, the defendant would face an advisory Guidelines sentence of 188 to 235 months' imprisonment. Furthermore, the defendant's known real property would be subject to forfeiture. 18 U.S.C. § 3142(g)(2).

3. The pertinent history and characteristics of the defendant are significant to this Court's assessment of his candidacy for bond. The defendant, age 47, was born in Syria and moved to Venezuela at the age of 7. He is currently a citizen of Venezuela; he is also a legal permanent resident of the United States.[4] He reported travel in the past 10 years to Syria, Venezuela, France, and Spain.

According to the defendant, he came to the United States in 2012 and has been residing in Davie (Florida) with his wife and three minor children. He has no other family residing in the United States; all of his other family members – his mother and nine siblings – reside in Venezuela.

In 2014, the defendant purchased the residence in which he is currently residing for

---

[3] At the hearing, the case agent testified that the defendant revealed during the July 13, 2015 meeting that the cash came from gangs and sketchy people.

[4] The Government noted that because the defendant's involvement in the conspiracy commenced in 2009 – that is, three years before his 2012 arrival in the United States – he may have made false statements in his immigration paperwork to obtain his permanent residency.

4

$2,341,000, which he owns free and clear.[5] In 2012, he purchased a residence in Sunrise (Florida) for $363,000, which he also owns free and clear.[6] In addition to his real estate holdings, the defendant reported ownership of a 2014 Range Rover valued at $50,000, 12 Rolex watches valued at more than $150,000, and a bank account with a balance of $2,000. The defendant told Pretrial Services that when he came to the United States he worked as a machinist for three years, earning $10,000 per month. He added that for the past two years he has been working with his wife in the real estate business. According to the defendant, together they earn approximately $180,000 per year. Significantly, the defendant reported monthly expenses ($9,266) that exceed his monthly income ($7,500). Finally, when the defendant's wife was asked by Pretrial Services about the defendant's current employment, she reportedly stated: "I don't know I have to think about it"; followed by, he "works with gold"; and then, "[y]es he helps me with my job."

The Government expressed its suspicion that the defendant possesses unreported assets. It explained that although the defendant claims a net worth in excess of $2,000,000, he reported only a net monthly income of $7,500 and a single bank account with a $2,000 balance. The undersigned finds that the disparity between the defendant's net worth and his reported income and liquid assets is considerable. Additionally, the undersigned finds that the defendant's monthly expenses exceed his reported monthly

---

[5] On March 1, 2019, the Government filed a Notice of Lis Pendens on this property. [ECF No. 7]. According to the Government, the property was purchased with narcotics proceeds and is therefore subject to forfeiture.

[6] At the hearing, the Government represented that it will be filing a Notice of Lis Pendens and seeking the forfeiture of this property, as it was allegedly utilized for the planning and delivery of narcotics proceeds.

5

income by almost 25%. Taken together, these findings permit a reasonable inference that the defendant possesses unreported assets.

Given the defendant's foreign citizenship, his extensive familial ties to Venezuela, his lack of familial ties to the United States (aside from his wife and children), his questionable financial ties to the United States, his lack of verifiable legitimate employment, his past foreign travel, his apparent disregard for the law, his (suspected) unreported assets, the strength of the evidence, and the severity of his prospective sentence (followed by removal from the United States), the undersigned does not believe that he would be likely to appear if released on bond prior to trial. 18 U.S.C. § 3142(g)(3)(A) and (B).

4. The Government did not argue, and the undersigned does not find, that the defendant constitutes a danger to the community. 18 U.S.C. § 3142(g)(4).

5. The Court specifically finds that there is no condition or combination of conditions of release that reasonably will assure the defendant's appearance as required. 18 U.S.C. § 3142(e).

Based upon the above findings of fact, which were supported by clear and convincing evidence, the Court has concluded that the defendant, Mohannad Ilbih Ilbih, presents a risk of flight if released on bond prior to trial. Accordingly, the Court hereby ORDERS:

1. That the defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That the defendant be afforded reasonable opportunity for private

6

consultation with counsel; and

3. That, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

DONE AND ORDERED at Fort Lauderdale, Florida this 7th day of March 2019.

BARRY S. SELTZER
United States Magistrate Judge

Copies furnished via CM/ECF to:

Honorable Cecilia M. Altonaga
United States District Judge

All counsel of record

United States Marshal

United States Pretrial Services